114 Cal.App.2d Supp. 841 (1952)
THE PEOPLE, Respondent,
v.
ROSEMARY AGNEW, Appellant.
California Court of Appeals. 
Nov. 17, 1952.
 Rosemary Agnew, in pro. per., for Appellant.
 Ray L. Chesebro, City Attorney (Los Angeles), Donald M. Redwine, Assistant City Attorney, and Philip E. Grey, Deputy City Attorney, for Respondent. [114 Cal.App.2d Supp. 843]
 BISHOP, J.
 Because the defendant was brought to trial without the aid of counsel, although she repeatedly requested that counsel be afforded her, we are reversing the judgment sentencing her to imprisonment on each of two counts, and are reversing the order denying the defendant a new trial.
 The record before us reveals these facts: The defendant was charged with agreeing to perform a lewd act for money, and with being a lewd person. When arraigned for her plea on January 18, she was represented by counsel, a deputy public defender. Time to plead was requested and granted. Upon the date fixed for her plea, the defendant appeared, and, the minutes of the court state, she was again represented by the deputy public defender who had first appeared as her counsel. It seems rather clear, however, from affidavits filed later in support of a motion for relief, that that deputy did not attend the hearing and that the deputy who did attend did not appear on defendant's behalf. In any event, she filed a demurrer "respectfully submitted" in her own name. The hearing on the demurrer was continued to January 25, at which time, defendant unquestionably appearing without counsel, it was overruled.
 A motion for relief was then filed, its first request being the appointment of counsel. This request was denied February 13, and a like request on February 15 was also denied. Defendant's trial commenced in the morning of March 6, she having waived a jury "because my husband told me so." At the opening of the afternoon session the defendant stated that she was 17 years of age--a fact that appears without refutation in several affidavits also--without funds to employ an attorney, and she desired the court to appoint counsel for her. The motion was denied without inquiry or comment.
 The case was one where the need of skilled counsel was glaringly apparent. The defendant over and over betrayed, by what she said and did, her bewilderment at what was going on. The testimony of the police officers was in direct conflict with the essential parts of her somewhat incoherent statements as a witness, and, had a foundation been laid while he was on the stand, the main witness for the People could have been impeached at a vital point by the testimony he had given less than three months earlier at a juvenile court hearing. In making this statement, we are assuming, as we may, that defendant's husband would have testified if called as a witness, to the same facts that he swore to in an affidavit filed in support of defendant's motion for a new trial. A layman, even one [114 Cal.App.2d Supp. 844] mature enough and sufficiently equipped, mentally, to conduct his defense under ordinary conditions, could not be expected to know that, if he desired to impeach a witness by showing that he had made contrary statements on other occasions, he must lay the foundation for the impeaching evidence while the witness is on the stand. Too many counsel show themselves ignorant of this requirement for us to concede that it is one that a layman should be expected to know.
 We have, then, a case where the failure of the trial court to see to it that the defendant was represented by counsel was a denial of the due process required by the Fourteenth Amendment. [1] It is not every denial, in a state court, of the appointment of counsel, that results in a denial of due process. (Betts v. Brady (1941), 316 U.S. 455 [62 S.Ct. 1252, 86 L.Ed. 1595].) But, we read in Palmer v. Ashe (1951), 342 U.S. 134, [72 S.Ct. 191, 96 L.Ed. 154, 157]: "This court repeatedly has held that the Due Process Clause of the Fourteenth Amendment requires states to afford defendants assistance of counsel in non-capital criminal cases when there are special circumstances showing that without a lawyer a defendant could not have an adequate and a fair defense." Such a case was Wade v. Mayo (1947), 334 U.S. 672, 684 [68 S.Ct. 1270, 92 L.Ed. 1647, 1654], where it was stated: "There are some individuals who, by reason of age, ignorance or mental capacity, are incapable of representing themselves adequately in a prosecution of a relatively simple nature. This incapacity is purely personal and can be determined only by an examination and observation of the individual. Where such incapacity is present, the refusal to appoint counsel is a denial of due process of law under the Fourteenth Amendment." (As already indicated, the incapacity of the defendant in our case was patently present.) (See, also, Uveges v. Pennsylvania (1948), 335 U.S. 437 [69 S.Ct. 184, 93 L.Ed. 127].)
 It is true, as counsel for the People contend, that none of the cited cases deals with misdemeanors. [2] This, however, does not serve to distinguish them, for the requirement of the Fourteenth Amendment, that no person shall be deprived of liberty or property without due process, applies equally where the deprivation occurs by means of a prosecution on a misdemeanor charge. (See In re McCoy (1948), 32 Cal.2d 73, 76 [194 P.2d 531, 532], and Tumey v. Ohio, (1927), 273 U.S. 510 [47 S.Ct. 437, 71 L.Ed. 749].)
 [3] The defendant's right to have the assistance of counsel in making her defense has, in addition to the Fourteenth [114 Cal.App.2d Supp. 845] Amendment to the federal Constitution, the protection of section 13, article I, of our state Constitution. Its provision that "In criminal prosecutions, in any court whatever, the party accused shall have the right ... to appear and defend, in person and with counsel," applies to a person brought before a police court on a misdemeanor charge (In re Jingles (1946), 27 Cal.2d 496, 498 [165 P.2d 12, 14]), and so to the defendant in this case.
 It will be remembered that when the defendant was originally arraigned for her plea, she was represented by counsel. The circumstance that her counsel was a deputy public defender is not one of significance to the constitutional question we are considering. [4] The source of his compensation is different, but otherwise the relation of attorney and client is the same when a public defender appears for one accused of crime as would be the relation between privately employed counsel and client. (In re Hough (1944), 24 Cal.2d 522, 528-529 [150 P.2d 448, 451]; People v. O'Neill (1947), 78 Cal.App.2d 888, 891 [179 P.2d 10, 12]; People v. Avilez (1948), 86 Cal.App.2d 289, 296 [194 P.2d 829, 834].) That relationship having been entered into, proceedings following the original arraignment should not have been undertaken in the absence of defendant's counsel without inquiry as to the reason for his absence or his withdrawal from the case, for some good reason. If such good reason is found in the fact that the defendant was released on bail, a fact not affirmatively appearing but made probable by the minute entry that a bail bond had been posted, then it became the duty of the trial court, upon the withdrawal of the public defender, to give the defendant an opportunity to secure counsel or, if, as she stated, she was financially unable to secure her own, to provide her with one. The time honored method has been to appoint a member of the bar, who, under obligation "Never to reject, for any consideration personal to himself, the cause of the defenseless or the oppressed" (Bus. & Prof. Code, 6068) may have to act without compensation. (Rowe v. Yuba County (1860), 17 Cal. 61; Lamont v. Solano County (1874), 49 Cal. 158, and see discussion in Gibson v. County of Sacramento (1918), 37 Cal.App. 523, 529 [174 P. 935].) The more modern method is to provide public defenders, and by ordinance such legal assistance is afforded the needy in Los Angeles City. [5] The trial court, however, took no step to ascertain whether or not the defendant could obtain counsel or why the counsel that she had was not present, and failed to act favorably upon [114 Cal.App.2d Supp. 846] several pleas that counsel be provided, made both before the case was sent out for trial and afterward. In this it erred.
 [6] The defendant cannot be said to have waived the right to counsel. At the beginning she had counsel. If, as seems established, he failed to appear on her behalf after the original arraignment, and the defendant appeared for herself by filing the lengthy demurrer prepared for her (by her husband, no doubt), that appearance did not, in her case, constitute a waiver of her right to be represented by counsel. As stated both in People v. Chesser (1947), 29 Cal.2d 815, 821 [178 P.2d 761, 764], and in Johnson v. Zerbst (1937), 304 U.S. 458, 465 [58 S.Ct. 1019, 82 L.Ed. 1461, 1467], the "purpose of the constitutional guaranty of a right to Counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution." Moreover, if by her inadvertent action she had waived the right to have counsel when her demurrer was ruled upon, immediately thereafter she made a motion that counsel be appointed, and this and subsequent motions were denied, apparently summarily.
 [7a] Anticipating the contention that error should not be presumed, and that we have no transcript or narration in the statement on appeal revealing the showing made to the trial court of defendant's need of the court's assistance, we call attention to the fact that the matter we have been discussing was specifically made one of the grounds of the appeal. It also clearly appears that after one (or possibly two) appearances by the public defender no counsel appeared on defendant's behalf, and she repeatedly expressed the need for one. If there was any circumstance that excused the failure of the trial court to provide her with counsel, that circumstance should have been made to appear in the record in some fashion, and it does not. Again quoting from Johnson v. Zerbst, supra, 304 U.S. 458, 465 [58 S.Ct. 1019, 82 L.Ed. 1461, 1467]: "The constitutional right of an accused to be represented by Counsel invokes, of itself, the protection of a trial court, in which the accused--whose life or liberty is at stake--is without Counsel." After referring to these words, our Supreme Court, in People v. Chesser, supra, 29 Cal.2d 815, 822 [178 P.2d 761, 764], quoted further, with emphasis added: "While the accused may waive the right to Counsel, whether there is a proper waiver should be clearly determined by the trial court, and it [114 Cal.App.2d Supp. 847] would be fitting and appropriate for that determination to appear upon the record."
 [8] There is a suggestion in the brief of the People, and the thought may have been in the minds of the trial judges, that the defendant was receiving all the legal assistance to which she was entitled from her husband, who, though not admitted to the bar, has been before the bar of justice in this state on so many occasions that he has picked up more than a little legal learning. We do not doubt that he wrote the briefs the defendant has submitted in this case, and they are well written. The suggestion, however, is quite unworthy of consideration as a contention, for it appears by way of undenied affidavits that defendant's husband was threatened with contempt proceedings if he assisted her during some procedural steps in the case, and at the trial was permitted to sit with her as her "investigator," but expressly admonished not to advise as to her legal rights "nor as to what course you should take in the conduction of this trial." Without debating the propriety of a declaration that a husband may not advise a wife, who is appearing in propria persona, as to her course of action, it is of course obvious that when so restrained he may not be said to so meet her needs for legal assistance that she is not prejudiced by her lack of counsel.
 [7b] We entertain no doubt that the judgment should be reversed. It and the order denying the defendant a new trial are reversed. The appeals from all other matters are dismissed.
 Shaw, P. J., and Stephens, J., concurred.